JMK/AES: HDM
F. #2018R01201

GARAUFIS, J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEVY, M.J.

------------------------------X

UNITED STATES OF AMERICA

- against -

PATRICK MCDONNELL,
　　also known as "Jason Flack,"

　　　　　　　Defendant.

INDICTMENT

Cr. No. **19-148**
(T. 18, U.S.C., §§ 981(a)(1)(C), 1343, 2
and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

------------------------------X

THE GRAND JURY CHARGES:

At all times relevant to this Indictment, unless otherwise indicated:

INTRODUCTION

I.　　Background

　　　　1.　　The defendant PATRICK MCDONNELL, also known as "Jason Flack," a resident of Staten Island, New York, was the sole owner and operator of CabbageTech, Corp. ("CabbageTech") from approximately May 2016 to January 2018. At various times, MCDONNELL referred to himself as the Chief Technology Officer, or "CTO," of CabbageTech.

　　　　2.　　CabbageTech was a New York corporation that operated in Staten Island, New York, and was incorporated on or about May 6, 2016. From approximately May 2016 to January 2018, CabbageTech marketed itself as a virtual currency advisory and trading business. CabbageTech claimed to offer investors memberships and services, such as advice about investing in virtual currencies and making purchases and sales of virtual currencies on behalf of

1

investors. At times, CabbageTech did business under the name Coin Drop Markets. CabbageTech advertised on social media and operated Facebook, Twitter and Slack accounts in the name of Coin Drop Markets. CabbageTech also operated a website in the name of Coin Drop Markets.

        3.     The term "virtual currency" was a digital representation of value that functions as a medium of exchange, a unit of account and/or a store of value. Some virtual currencies have an equivalent value in other currencies, such as United States dollars or Euros, or can be traded for other virtual currencies. These were referred to as convertible virtual currencies. Bitcoin was an example of a convertible virtual currency. Virtual currencies were commodities under the Commodity Exchange Act and were regulated by the United States Commodity Futures Trading Commission.

II.    <u>The Fraudulent Scheme</u>

        4.     In or about and between November 2014 and January 2018, the defendant PATRICK MCDONNELL, also known as "Jason Flack," engaged in a fraudulent scheme to induce potential customers and customers through deceptive and fraudulent solicitations to send money and virtual currency to MCDONNELL in exchange for (1) purported virtual currency trading advice, (2) virtual currency purchases and (3) trading under MCDONNELL's direction on behalf of customers. MCDONNELL's customers sent money to MCDONNELL using checks and bank wire transactions, and sent virtual currency to MCDONNELL using wire transfers. Soon after obtaining the funds from his customers, MCDONNELL stopped communicating with them and misappropriated the funds.

        5.     The defendant PATRICK MCDONNELL, also known as "Jason Flack," accomplished the fraudulent scheme through the use of phone calls and emails to potential

customers, advertisements, websites on the internet and social media, all designed to create the appearance of sophistication and legitimacy to the purported opportunities available through Coin Drop Markets. Through Coin Drop Markets' Facebook page and communications with customers, MCDONNELL falsely advised his customers that CabbageTech had extensive assets under management, an office on Wall Street in New York, New York and a large organizational structure. For example, on or about May 10, 2017, MCDONNELL emailed Victim #1, an individual whose identity is known to the Grand Jury, falsely stating that he had over 8,000 active investors and that he traded over $50 million in Bitcoin for his investors.

6. In furtherance of the fraudulent scheme, PATRICK MCDONNELL, also known as "Jason Flack," used the alias "Jason Flack" when speaking to potential customers and customers. For example, in or about January 2017, MCDONNELL, using the false name "Jason Flack," called Victim #2, an individual whose identity is known to the Grand Jury, to solicit Victim #2's investment in virtual currency with Coin Drop Markets.

7. In furtherance of the fraudulent scheme, the defendant PATRICK MCDONNELL, also known as "Jason Flack," through CabbageTech, solicited funds from customers by offering a wide array of memberships and services for obtaining advice about trading virtual currencies. For example:

   (a) MCDONNELL advertised membership in trading groups such as RedliteGreenLite, BTC, relating to the virtual currency Bitcoin, and RedliteGreenLite, LTC, relating to the virtual currency Litecoin. These memberships purportedly offered expert entry-and-exit-price guidance for day trading of certain virtual currencies. MCDONNELL never provided the guidance as promised.

   (b) MCDONNELL solicited memberships or subscriptions to other groups and services, such as a "Turn-Key Annual Membership," which purported to provide customers with access to MCDONNELL and CabbageTech's supposed virtual currency trading expertise, mentorship and guidance.

3

MCDONNELL never provided expertise, mentorship or guidance as promised in these memberships.

(c) MCDONNELL advertised memberships in a variety of levels ranging from "Bronze" to "Diamond," with the level of services supposedly increasing with the price of the membership. MCDONNELL did not provide these varying levels of services.

8. The defendant PATRICK MCDONNELL, also known as "Jason Flack," also induced customers to send him money and virtual currencies to trade on their behalf by making false and misleading claims to potential customers and customers. For example:

(a) MCDONNELL claimed Wall Street trading expertise, virtual currency expertise, an ongoing record of exceptional performance in trading virtual currencies and a large clientele. In reality, MCDONNELL had no such expertise, record of performance or large clientele.

(b) MCDONNELL told customers that CabbageTech was offering virtual currency at below market rates. CabbageTech did not offer virtual currencies at below market rates. In reality, MCDONNELL took money from customers and misappropriated the funds.

(c) MCDONNELL claimed that he would provide escrow services for virtual currency that customers purchased through CabbageTech. For example, MCDONNELL told Victim #3, an individual whose identity is known to the Grand Jury, that the virtual currencies Victim #3 purchased would be kept in escrow and that MCDONNELL would trade the virtual currencies on Victim #3's behalf. In reality, MCDONNELL never provided such services.

(d) MCDONNELL told customers that he would manage their invested funds. In reality, after receiving money and virtual currencies from customers, MCDONNELL misappropriated those funds. For example, MCDONNELL repeatedly withdrew customer funds deposited into CabbageTech's bank account from ATMs for his own use soon after receiving the funds.

9. In furtherance of and to conceal his fraudulent scheme, the defendant PATRICK MCDONNELL, also known as "Jason Flack," provided false account statements and performance updates to customers who had sent funds to MCDONNELL for investment in

virtual currencies. These statements and reports falsely stated that MCDONNELL was achieving profits for his customers. For example, in or about September 2016, MCDONNELL emailed Victim #4, an individual whose identity is known to the Grand Jury, informing Victim #4 that Victim #4's account balance was $274,118.04, which was more than the approximately $164,700 Victim #4 had invested with MCDONNELL. In reality, MCDONNELL had not invested Victim #4's funds but had used Victim #4's funds for MCDONNELL's own personal use.

10. When customers asked to withdraw their investments and purported gains, the defendant PATRICK MCDONNELL, also known as "Jason Flack," offered several false excuses for delays in repayment. For example, MCDONNELL told customers that their purportedly profitable investments had been reinvested, that his secretary had forgotten to send a check to the customer or that his accounts had been hacked so that the customer's money could not be located. For example, in or about June 2017, MCDONNELL informed Victim #3 in a telephone call that MCDONNELL's secretary had forgotten to send Victim #3's refund check. In addition, on or about June 9, 2017, when Victim #2 requested a refund of his investment from "Jason Flack," Victim #2 received an email stating that "Jason" no longer worked with Coin Drop Markets and that Victim #2 would receive Victim #2's money in five to seven business days. Victim #2 never received any money back.

11. In approximately June 2017, after receiving multiple requests from customers for refunds, the defendant PATRICK MCDONNELL, also known as "Jason Flack," shut down the Coin Drop Markets website and chatroom, deleted social media accounts on Twitter and ceased communicating with customers. For example, in or about June 2017, when Victim #5, an individual whose identity is known to the Grand Jury, asked MCDONNELL for

his money back, MCDONNELL deactivated the Twitter account for Coin Drop Markets and ceased communicating with Victim #5.

12. None of the customers who provided funds to the defendant PATRICK MCDONNELL, also known as "Jason Flack," ever received a refund. Instead, MCDONNELL fraudulently kept his customers' funds. In total, MCDONNELL defrauded at least ten victims of at least $194,000 in U.S. currency, 4.41 Bitcoin, 206 Litecoin, 620 Ethereum Classic and 1,342,634 Verge currency.

COUNTS ONE THROUGH NINE
(Wire Fraud)

13. The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. In or about and between November 2014 and January 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK MCDONNELL, also known as "Jason Flack," together with others, did knowingly and intentionally devise a scheme and artifice to defraud potential customers and customers of MCDONNELL and CabbageTech, also known as Coin Drop Markets, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises.

15. On or about the dates set forth below, for the purpose of executing such scheme and artifice, the defendant PATRICK MCDONNELL, together with others, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

| Count | Date | Description |
|---|---|---|
| ONE | August 31, 2015 | Email from MCDONNELL to Victim #4 in which MCDONNELL stated that Victim #4 had an account balance of $274,118.04. |
| TWO | September 2016 | Telephone call from MCDONNELL to Victim #4 in which MCDONNELL stated, among other things, that MCDONNELL was under investigation and his accounts were frozen. |
| THREE | April 2017 | Telephone call from MCDONNELL to Victim #5 in which MCDONNELL solicited Victim #5's investment in a new virtual currency purportedly developed by MCDONNELL called "TIGR." |
| FOUR | May 10, 2017 | Email from MCDONNELL to Victim #1 in which MCDONNELL stated, among other things, that Victim #1's virtual currency investment was "up big," and that MCDONNELL had over 8,000 active investors and traded more than $50 million in Bitcoin. |
| FIVE | June 2017 | Telephone call from MCDONNELL to Victim #3 in which MCDONNELL informed Victim #3 that MCDONNELL's secretary had forgotten to send Victim #3's refund check. |
| SIX | June 9, 2017 | Email from MCDONNELL to Victim #2 in which MCDONNELL stated, among other things, that Victim #2 would receive his money back in five to seven business days. |
| SEVEN | June 19, 2017 | Twitter message from MCDONNELL to Victim #1 in which MCDONNELL stated that he was "Gonna get your LTC [Litecoin] back to you." |
| EIGHT | June 20, 2017 | Email from MCDONNELL to Victim #3 in which MCDONNELL stated that Victim #3 had an account balance of $176,703.34. |
| NINE | June 22, 2017 | Email from MCDONNELL to Victim #3 in which MCDONNELL stated that Coin Drop Markets' website had been hacked and Coin Drop Markets' memberships were suspended. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

16. The United States hereby gives notice to the defendant that, upon conviction of any of the offenses charged herein, the government will seek forfeiture, in

7

accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from, proceeds obtained directly or indirectly as a result of such offenses.

17.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (d)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

*[signature]*
FOREPERSON

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: *[signature: Bridget M. Rohde]*
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F.#: 2018R01201

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

PATRICK MCDONNELL,
Also known as "Jason Flack,"

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 1343, 2
and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this 25th day,*

*of March A.D. 2019*

_____

*Clerk*

Bail, $ _____

_____

**Hiral Mehta, Assistant U.S. Attorney (718) 254-6411**